**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | | |
|---|---|---|---|
| TOYA DIXON-RANDOLPH, on behalf of herself and all others similarly situated, | ) ) ) | | |
| Plaintiff, | ) ) | No. _____ | |
| v. | ) ) | **CLASS ACTION** | |
| CITY OF CHICAGO, | ) ) | | |
| Defendant. | ) | | |

**CLASS ACTION COMPLAINT**

Plaintiff, Toya Dixon-Randolph ("Plaintiff"), on behalf of herself and all others similarly situated, upon personal knowledge of facts pertaining to her and information and belief as to all other matters, brings this action against Defendant City of Chicago (hereafter "City"), challenging the constitutionality of the City's ordinances governing parking and compliance violations. In support thereof, Plaintiff alleges the following:

**INTRODUCTION**

1.    This is a class action seeking damages, restitution, declaratory and injunctive relief for violations by the City of Chicago of the United States Constitution.

2.    This class-action arises from the City of Chicago's unconstitutional and unjust enforcement of its parking meters. For approximately the last decade, the City has engaged in a predatory enforcement practice in an attempt to recoup tremendous losses incurred from its notoriously unsuccessful privatization of its parking meter system reached in 2008. The City's sale of its meter system to Chicago Parking Meters, LLC ("CPM") for $1.15 billion is considered the model of "worst practices" in business negotiation. The City's decision to force drivers to bear the costs of its inequitable and unsatisfactory outcome financial decision has exploited all who utilize

1

its parking meters. Most importantly, these intemperate fines and inequitable violation assessments are particularly devastating for Chicago's low-income citizens who can least afford to pay them.

## PARTIES

3.     Plaintiff, TOYA DIXON-RANDOLPH, is a resident of Cook County, Illinois. She was cited for parking, standing, and/or compliance violations by the City of Chicago including, but not limited to, citations for an expired meter.

4.     Defendant, CITY OF CHICAGO, (City) is a Illinois Municipal Corporation.

## JURISDICTION AND VENUE

5.     This is a class action seeking damages, restitution, declaratory and injunctive relief for violations of 42 U.S.C. § 1983 by the City of Chicago.

6.     This Court has original jurisdiction over this matter pursuant to Article III of the Constitution, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights).

7.     Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred, in significant part, within this District and all Defendants reside or are located and/or doing business in the Northern District of Illinois.

## BACKGROUND
### Chicago Parking Meter System

8.     The City's metered parking system consists of approximately 36,000 metered parking spaces ("Meter System"), the purposes of which are to achieve parking turnover and availability which facilitates traffic management (i.e. reduces congestion), promotes local business and controls for pollution. See Chicago Parking Meter Facts Brochure, CITY OF CHICAGO (2009).

9.     In pursuit of this endeavor, the City adopted and enacted various requirements, restrictions and limitations to regulate the Meter System. Said regulations are codified in Municipal Code of Chicago (hereafter "MCC") Section 9-64-190 through 9-64-207.

10.     The City utilizes metered parking spaces to promote parking turnover and availability through two means (1) variable performance pricing and (2) time limits. U.S. Dept. of Trans., FHWA-HOP-12-026, *A Contemporary Approach to Parking Pricing: A Primer* 6 (2012).

11.     Variable performance pricing utilizes meter fees to allegedly incentivize parkers to spend less time in a parking space. When a fee is associated with use of the parking space, the trend is for parkers to use less time to avoid paying for an additional period where the cost outweighs the need for the space. Where however, the necessity for the space outweighs the cost associated with the meter, parkers may pay additional fees to continue use of the space for an extended time. Id.

12.     The City has codified this incentive-based policy in Section 9-64-205 and 9-64-207 of the MCC.

13.     Section 9-64-205 of the MCC establishes a variable pricing scheme for the Meter System and rates vary based on the meter's location or "zone."

14.     Meter prices for Chicago Neighborhoods (area outside the downtown area bounded by Roosevelt Avenue to the south, North Avenue to the north and Halsted Street to the west), and most rates are $2 per hour ($.03 per minute) from 8:00 a.m. to 10:00 p.m.

15.     In the Central Business District outside the Loop (area bounded by Lake Michigan to the east, North Avenue to the north, Halsted to the west, and Roosevelt Road to the south), rates are $4 per hour ($.06 per minute) from 8:00 a.m. to midnight.

16. In the Central Business District inside the Loop (area bounded by Lake Michigan to the east, Wacker Drive to the north and west, and Congress Parkway to the south), rates are $6.50 per hour ($.11 per minute) from 8:00 a.m. to 9:00 p.m. and $3.25 per hour ($.05 per minute) from 9:00 p.m. to 8:00 a.m.

17. Pursuant to Section 9-64-207 of the MCC, an individual may purchase any one-minute increment of time between the Zone Maximum and (a) 20 minutes if using the pay box at any meter location or (b) 15 minutes or 30 minutes when using the ParkChicago application depending on the meter location.

18. Conversely, the City relies on parking time limits to force turnover in the instances where its pricing policy fails to achieve its desired turnover rate. Rather than allowing an individual to decide to continuously bare the cost of the meter in exchange for use of the space (essentially monopolizing the space), maximum parking durations are established to force turnover. Once the time limit expires the vehicle is required to be removed lest the driver be fined.

19. These time limits are codified at Section 9-64-207 of the Municipal Code of Chicago. In the MCC, the City has established a maximum period of time for certain zones in the Meter System either through ordinance or by the Comptroller ("Zone Maximums").

20. Upon information and belief these Zone Maximums typically range from two to four hours. A meter's limit is posted on the meter and indicated within the mobile pay application, ParkChicago App.

21. Use of the Meter System is regulated under MCC Section 9-64-190.

22. Under MCC Section 9-62-190, it's unlawful to park in a designated metered parking space or zone without paying for its use.

4

23.     Furthermore, the vehicle may not remain in the space for any additional consecutive time following expiration of the meter, irrespective of whether the Zone Maximum has been reached.

24.     Allegedly**,** these requirements serve to promote the voluntary turnover plan implemented by the City in MCC Section 9-64-205 and Section 9-64-207.

25.     Additionally, the MCC requires the immediate removal of the vehicle following expiration of the Zone Maximum, a requirement that allegedly facilitates the time limit turnover strategy implemented by the City.

26.     These meter use requirements are enforced via an expired meter fine defined in the schedule of parking, standing, and compliance fines established in MCC Section 9-100-020.

<b>Enforcement of Meter System</b>

27.     The regulations set forth in 9-64-190 are enforced by the issuance of a fine, the amount of which is specified in the parking, standing, and vehicle compliance schedule of fines.

28.     This enforcement scheme is highly unequitable. It excessively fines an individual who underestimates the duration of their stay and **affords them no opportunity to rectify or mitigate the minor error**.

29.     In 2018 the fine for an expired meter in a non-central business district is $50.00. Municipal Code 9-64-190(a).

30.     The fine for an expired meter in a central business district is $65.00. Municipal Code 9-65-190(b).

31.     The fine is assessed regardless of how long the driver has overstayed (i.e. 1 sec., 1 minute, 10 minutes, or 1 hour all subjects an individual to the same fine).

32.     Most in these communities cannot afford to pay a $50/$65 parking fine.

33.    For those in low-income communities, the cost is not only excessive, it's devasting; failure to pay the exorbitant fine results in a late fee equal to the original fine doubling the driver's liability to the City.

34.    Furthermore, upon information and belief, this accumulation of debt can result in license suspension, vehicle immobilization, restricted access to required licenses to do business in the City, and even diminished access to grants and funding earmarked for low-income communities.

35.    Upon information and belief, the City's intent in enforcing meters through the issuance of parking tickets is to increase revenue, promote compliance with the Meter System and punish scofflaws.

36.    The fine however, is assessed regardless of how long one has overstayed and without consideration of the driver's previous payments to the meter.

37.    The second the meter expires you are subject to the fine.

38.    Accordingly, **a driver who has paid repeatedly to extend their meter time and remain compliant, is still susceptible to the excessively disproportionate and unjust punishment of $50/$65 fine if they mistakenly allow their meter to expire.**

39.    The inequity is absolutely unconscionable when weighed against the nominal cost the driver would have paid to extend the time (as little as 3 cents per minute and at most, 11 cents per minute) against the $50/$65 fine.

40.    **As an example, for a motorist parked in a Chicago Neighborhood who has paid but overstays as little as five minutes, the ratio of the penalty to the amount it would have cost to continue use of the same space is nearly 300:1.**

   a.  For those who parked in the Central Business District outside the Loop, the ratio is nearly **195:1**.

**b.** For those who parked in the Central Business inside the Loop between 8:00 a.m. – 9:00 p.m., **the ratio is 120:1**.

**c.** For those who parked in the inside the Loop between 9:00 p.m. – 8:00 a.m., **the ratio is 240:1**.

41.     Additionally, drivers are not afforded the opportunity to "mitigate their damages" by retroactively paying for the time they overstayed.

42.     While an individual is permitted to extend their parking session by purchasing "additional time" prior to the meter expiring to remain in compliance, immediately upon expiration said opportunity is no longer afforded either through an app or meter.  In other words, any opportunity to mitigate, correct or rectify the issue is not permitted with the use of the same technology that is afforded to grant or extend additional time to park.

43.     The City does not recognize as grounds for contesting an expired meter violations (i) correcting the violation prior to adjudication of the charge (i.e. adding extended time to the meter within limited period following expiration of the meter) or (ii) receipt of ticket within 5 minutes of meter expiration except for tickets issued prior to April 1, 2011.

44.     Recognizable grounds for contesting an expired meter violation include:

a)  Respondent was not the owner or lessee of the cited vehicle at the time of the violation;

b)  The cited vehicle or its state registration plates were stolen at the time the violation occurred;

c)  The relevant signs prohibiting or restricting parking or standing were missing or obscured;

d)  The relevant parking meter was inoperable or malfunctioned through no fault of the respondent;

e)  That the facts alleged in the violation notice are inconsistent or do not support a finding that the specified regulation was violated.

45.     From **January 1, 2010 to April 1, 2011**, however, the City **recognized receipt of an expired meter violation within five minutes of meter expiration as a ground for contesting the ticket**.

46.     Upon information and belief, **one of the purposes** for establishing this grace period was to **protect law-abiding individuals who accidently overstayed their meter time despite attempting to comply with the regulations by paying for the meter time.**

47.     **This grace period was extinguished on April 1, 2011.**

### The Chicago Skyway

48.     Upon information and belief, the Chicago Skyway is a toll system that utilizes variable rate pricing, the purpose of which is nearly identical to that of metered parking, e.g. facilitating traffic to reduce congestion.

49.     Use of the Skyway is regulated by MCC section 9-12-030.

50.     Similar to the Meter System, it's unlawful for a driver to use a toll highway that requires the payment of a predetermined toll without payment of the required fee(s). This provision is enforced by a fine of $25. *See* MCC Section 9-12-030.

51.     Accordingly, the enforcement of the payment requirement is significantly less severe than the $65 fine imposed for a meter violation.

52.     Notably, the tollway fine is referred to as a collection service fee on the public Skyway website rather than as fine as it is in the MCC and under the Meter System.

53.     Additionally, before the $25 fine is assessed toll violators are provided an opportunity to first pay the missed toll payment within 7-days of the violation, during which period no additional fees are assessed for the related violation, regardless of whether the non-payment was intentional or inadvertent.

54.     It is not until 7-days have passed that the $25 fine is assessed in addition to the missed toll fee, at which point the "user" either "intentionally or unintentionally" fails to pay the toll and is thus punished accordingly through the assessment of the fine.

**Plaintiff Facts**

55.     Plaintiff paid for the meter using the ParkChicago mobile app.

56.     The time Plaintiff paid to use the meter space was below the Zone Maximum.

57.     Plaintiff overstayed her meter time.

58.     Plaintiff was issued an expired meter parking ticket in a non-Central Business zone

with a fine of $50.

59.     Plaintiff paid the fine.

## CLASS ACTION ALLEGATION

60.     This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and

(b)(3), on behalf of Plaintiff and a class of similarly situated individuals defined as follows:

> All persons who were assessed and/or paid the penalties under the
> Schedule for parking at an unpaid or expired meter described above
> from 2010 onward (the "Class").

61.     Plaintiff also seek to represent the sub-class defined as follows:

> All persons who were assessed and/or paid an expired parking meter
> fine representing a triple digit-multiplier of the actual cost for the
> meter overstay period ("Sub-Class").

62.     The proposed Class satisfies the numerosity, commonality, typicality, and adequacy

requirements of those provisions.

63.     While the total number of members of the proposed Class are unknown they are so

numerous that joinder of all members is impractical. The exact number of members of the Class

can only be determined through discovery because this information is located in records

maintained by and in the exclusive control of Defendant and/or its agents. Upon information and

belief, Plaintiff reasonably believes the Class will contain numbers well into the thousands.

64.     Additionally, there is a well-defined community of interest in the questions of law and
fact involving this case. The relief sought is common to all Class members and common questions
of law and fact exist as to the Class that will predominate over questions if any, that affect only
individual Class members. Common questions include:

a)  Whether parking fines assessed by the City at the exact moment
    a meter expires or shortly thereafter constitute "excessive fines"
    under the United States Constitution or a disproportionate
    penalty under the Illinois Constitution;
b)  the appropriate equitable relief;
c)  whether the City should refund the payments (either in full or in
    part) it collected;
d   whether unpaid fees assessed against Class members should be
    forgiven;
e)  whether the City should be enjoined from further collection of
    unconstitutional fines and related penalties;
f)  other relief is granted by this court.

65.     The claims asserted by the class representative plaintiff are typical of the claims of the
members the Class Plaintiff seeks to represent. All Class members have been assessed and/or paid
the unconstitutional parking fines and were subjected to the predatory parking collection and
enforcement Defendant City of Chicago has implemented, maintained and enforced. The answers
to the common questions of law and fact raised by Defendant's actions will determine the claims
of the named plaintiff and other Class members.

66.     These common questions arise from the City's consistent assessment of fines and
penalties under their unlawful and predatory parking ticket collection and enforcement practice it
has instituted. Accordingly, the Defendant's actions are generally applicable to all Class members
thereby making declaratory judgment and injunctive relief appropriate with respect to the class as
a whole.

67.     There are no known conflicts of interest among Class members. All Class members
were assessed an unconstitutional and unlawful expired meter fine and thus share an interest in

vindicating and protecting their rights, recovering unlawfully collected payments made to Defendant under the parking scheme.

68. Additionally, Plaintiff, as Class representative and a member of the Class, will fairly and adequately protect the interests of the Class by vigorously pursuing this suit through attorneys experienced in litigation and trial.

69. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy for the reasons as follows.

70. Resolution of the claims on a Class-wide basis will (i) enable the cost-effective litigation of this matter in comparison to repetitive individual litigation and (ii) prevent the unnecessary expenditure of individual resources through repetitive litigation of the same claims, the economic benefits of which will inure to the Court and the parties.

71. Adjudication of the claims on an individual basis is not an economically viable option for many Class members due to the relatively small size of most individual's damages claims.

72. Most Class members lack the ability to prosecute individual actions due to a lack of financial resources and the complexity of the issues thereby preventing them from receiving legal representation or the redress owed to them for their injuries.

73. Because only select Class members have the ability to pursue prosecution of their claims, class treatment is required to (i) effectively deter Defendant from continuing their unlawful conduct, (ii) ensure Defendant is unable to retain millions of dollars in unjustly and unlawfully obtained funds, and (iii) effectively remedy and correct Defendant's unlawful and unfair conduct.

74. No unusual difficulties are anticipated in the management of this class action.

75. Plaintiff further requests this Honorable Court to appoint Plaintiff's Attorneys Patrick Dowd and Edward Clinton as Class Counsel and for class certification.

## COUNT I
### Relief Under Of 42 U.S.C. § 1983 for Unconstitutional Fines Under the Eighth Amendment.
(by individual and proposed Class)

76.     Plaintiff realleges and incorporates by reference Paragraphs (1) to (75) of this Complaint as is stated fully herein.

77.     Plaintiff and members of the proposed class have been prosecuted for a violation of MCC 9-64-190.

78.     Plaintiff and members of the proposed class have paid and/or are liable to pay the associated fine(s) for said violation as set forth in MCC 9-100-020.

79.     These fines are civil sanctions that are punitive in nature.  They have the purposes of ensuring compliance with 9-64-190 and punishing scofflaws. Accordingly, the fines include retributive and deterrent elements.

80.     The Eighth Amendment to the United States Constitution protects individuals from excessive fines.

81.     Plaintiff and members of the proposed class have a right not to have excessive fines imposed against them.

82.     A parking violation fine of $65 in a central business district is grossly disproportionate to the nature of the offense given the proportionality of the fine to the actual damages caused.

83.     A parking violation fine of $50 in a non-central business district is grossly disproportionate to the nature of the offense given the disproportionality of the fine to the damages caused.

84.     The protection of the Eighth Amendment applies to state municipalities. (*See* Timbs v. Indiana, 2019 U.S. LEXIS 1350 * | __ S.Ct. __ | 2019 WL 691578).

12

85.     By the facts and actions described heretofore, Defendant City of Chicago and their official parking meter policy has an unconstitutional policy of imposing and collecting excessive fines upon Plaintiff and members of the proposed Class.

86.     Defendant City of Chicago passed ordinances, 9-64-190 and 9-100-020, to establish and enforce a schedule of fines for expired meter violations.

87.     Defendant City of Chicago's municipal policy is the moving force behind the violation of Plaintiff and proposed Class members right to be free from excessive fines as it provides the basis and authorization for the imposition of the unconstitutional fines.

88.     Defendant City's enforcement of its parking meter policy through the imposition of grossly disproportionate penalties has deprived motorists of their right to be free from excessive fines.

89.     Defendant City has violated and continues to violate the right of Plaintiff and the members of the proposed class protected by the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

90.     Defendant's actions have directly and proximately caused Plaintiff and Class members immediate, irreparable harm, including but not limited to loss of money.

WHEREFORE, Plaintiff prays that the Court:

A.      Declare that the City's expired meter parking violation fines are unconstitutionally excessive and unenforceable, and, therefore, that any liability and any fines, penalties or other amounts stemming from any such violations are void *ab initio* and unenforceable, that Plaintiff and Class members need not pay outstanding fines, penalties or other amounts stemming from any such violations, and that Plaintiff and Class members are entitled to restitution of them if they were paid;

B.  Issue an order for Defendant to cease enforcement and prosecutions under such statute;

C.  Grant an award of reasonable attorneys' fees and all expenses and costs of this action;

D.  Order such other and further relief as this Court deems equitable, just and proper; and

E.  Award Plaintiffs and class members damages in excess of 15 million dollars or in an amount to be determined according to proof.

## COUNT II
**Relief Under Of 42 U.S.C. § 1983 for Unconstitutional Fines Under the Eighth Amendment**
(by individual and proposed Sub-Class)

91.  Plaintiff realleges and incorporates by reference Paragraphs (1) to (90) of this Complaint as is stated fully herein.

92.  Plaintiff and members of the proposed Sub-Class paid to park at a parking meter in the City of Chicago.

93.  Plaintiff and members of the proposed Sub-Class subsequently overstayed the meter time for which payment was made.

94.  Plaintiff and members of the proposed Sub-Class have been prosecuted for a violation of MCC9-64-190.

95.  Plaintiff and members of the proposed Sub-Class have paid and/or are liable to pay the associated fine(s) for said violation as set forth in MCC 9-100-020.

96.  The ratio of the fines assessed against Plaintiff and members of the proposed Sub-Class to the price of the overstay period are more than or equal to 100:1.

97.  These fines are civil sanctions but are punitive in nature. They have the purpose of ensuring compliance with 9-64-190 and punishing scofflaws. Accordingly, the fines include retributive and deterrent elements.

14

98.     The Eighth Amendment to the United States Constitution protects individuals from excessive fines and forfeitures.

99.     Plaintiff and members of the proposed Sub-Class have a right not to have excessive fines imposed against them.

100.    The expired meter fines established and imposed under MCC 9-100-20 are unconstitutionally excessive as applied to Plaintiff and proposed members of Sub-Class 1.

101.    An expired meter fine with a ratio of 100:1 or higher to the damage incurred is grossly disproportionate to the nature of the offense, minor parking violations, given the disproportionality of the fine to the damages caused.

102.    The protection of the Eighth Amendment applies to state municipalities. (*See* Timbs v. Indiana, 2019 U.S. LEXIS 1350 * | __ S.Ct. __ | 2019 WL 691578).

103.    By the facts and actions described above regarding the City's official parking meter policy, Defendant City of Chicago had and has an unconstitutional policy of imposing and collecting excessive fines upon Plaintiff and members of the proposed Sub-class 1.

104.    Defendant City of Chicago passed ordinances, 9-64-190 and 9-100-020, to establish and enforce a schedule of fines for expired meter violations.

105.    Defendant City of Chicago's municipal policy is the moving force behind the violation of Plaintiff and proposed Class members right to be free from excessive fines as it provides the basis and authorization for the imposition of the unconstitutional fines.

106.    The City's enforcement of its parking meter policies through the imposition of grossly disproportionate penalties has deprived motorists of their right to be free from excessive fines.

107.     Defendant City of Chicago has violated and continues to violate the right of Plaintiff and the members of the proposed Sub-Class protected by the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

108.     Defendant's actions have directly and proximately caused Plaintiff and proposed Sub-Class members immediate and irreparable harm, including but not limited to loss of money.

WHEREFORE, Plaintiff prays that the Court:

A.     Declare that the City's expired meter parking violation fines as applied to Sub-Class members are unconstitutionally excessive and unenforceable,  and, therefore, that any liability and any fines, penalties or other amounts stemming from any such violations are void ab initio and unenforceable, that Plaintiff and Class members need not pay outstanding fines, penalties or other amounts stemming from any such violations, and that Plaintiff and Class members are entitled to restitution of them if they were paid;

B.     Issue an order for Defendant to cease enforcement and prosecutions under such statute;

C.     Grant an award of reasonable attorneys' fees and all expenses and costs of this action;

D.     Order such other and further relief as this Court deems equitable, just and proper; and

E.     Award Plaintiffs and class members damages in excess of 15 million dollars or in an amount to be determined according to proof.

### COUNT III
**Relief Under Of 42 U.S.C. § 1983 for Violation of Rights Secured by The Equal Protection Clause of The Fourteenth Amendment**
(by individual and proposed Class)

109.     Plaintiff realleges and incorporates by reference Paragraphs (1) to (108) of this Complaint as is stated fully herein.

110.     The protection of the Fourteenth Amendment applies against state municipalities.

16

111. Defendant City of Chicago has custom and practice of allowing toll road violators an opportunity to cure their violation before a penalty is assessed.

112. This custom and practice, which is readily available on the Chicago Skyway website, is so well settled and widespread that the policymaking officials of the City can be said to have either actual or constructive knowledge of said policy.

113. Having actual or constructive knowledge of this custom and practice, the City has done nothing to end this predatory practice.

114. The aforementioned custom and practice is a policy of Defendant City of Chicago having the force of law.

115. Plaintiff and proposed class members were and are similarly situated to drivers who are remiss to pay for use of the Chicago Skyway at the time of use thereof.

116. Nevertheless, the City does not afford Plaintiff and proposed Class members the same opportunity to cure, rectify or mitigate the failure to pay violation.

117. Defendant's policy of providing toll road violators an opportunity to rectify a violation before imposition of a penalty, but not affording Plaintiff and proposed Class members the same opportunity, deprives Plaintiff and proposed Class members of rights secured by Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

118. Plaintiff and Class members have suffered and will suffer damages, including but not limited to, loss of money as a direct and proximate result of the City's constitutional violations.

119. The City is liable under a municipal liability for these violations.

WHEREFORE, Plaintiff prays that the Court:

A.    Declare that the lack of any opportunity to cure, rectify or mitigate the failure to pay meter violation unconstitutionally deprives Plaintiff and Class members of their

Fourteenth Amendment right to equal protection of the law and therefore that any liability and any fines, penalties or other amounts stemming from any such violations are void ab initio and unenforceable,  and that Plaintiff and Class  members need not pay outstanding fines in excess of the amount charged for the overstay period at the meter and/or are entitled to restitution of the excess of said amount if they were paid;

B.   Issue and order prohibiting the City from discriminatorily enforcing its Meter policy in violation of the Fourteenth Amendment;

C.   Grant an award of reasonable attorneys' fees and all expenses and costs of this action;

D.   Order such other and further relief as this Court deems equitable, just and proper; and

E.   Award Plaintiffs and Class members damages in excess of 15 million dollars or in an amount to be determined according to proof.

<u>**COUNT IV**</u>
**Relief Under Of 42 U.S.C. § 1983 for Deprivation of Due Process in Violation the Fourteenth Amendment**
(by individual and proposed Class)

120.   Plaintiff realleges and incorporates by reference Paragraphs (1) to (119) of this Complaint as is stated fully herein.

121.   The Fourteenth Amendment to the United States Constitution, section 1, prohibits any State from depriving any person of life, liberty, or property without due process of law.

122.   The protection of the Fourteenth Amendment applies against state municipalities.

123.   The Defendant's excessive penalties scheme and their enforcement thereof, as above alleged, have deprived Plaintiff and members of the proposed Class of property in violation of due process.

124. The Defendant's unconstitutionally unequal treatment of Plaintiff and proposed Class members with similarly situated toll violators, has deprived and continues to deprive Plaintiff and Class members of property in violation of due process.

125. The Defendant's enforcement and adjudication policy of parking meter violations does not allow alleged violators to cure the violation through retroactive payment for use of a meter space under or up to the meter maximum.

126. The lack of an opportunity to cure, rectify or mitigate deprives Plaintiff and proposed Class members of property in violation of due process.

WHEREFORE, Plaintiff prays that the Court:

A. Declare that the Defendant's parking meter enforcement and adjudication policy unconstitutionally deprives Plaintiff and Class members of their Fourteenth Amendment right to due process and therefore that any liability and any fines, penalties or other amounts stemming from any such violations are void ab initio and unenforceable, that Plaintiff and Class members need not pay outstanding fines in excess of the amount charged for the overstay period at the meter, and that Plaintiff and Class members are entitled to restitution of the excess of said amount if they were paid;

B. Issue and order prohibiting the City from discriminatorily enforcing its Meter policy in violation of the Fourteenth Amendment;

C. Grant an award of reasonable attorneys' fees and all expenses and costs of this action;

D. Order such other and further relief as this Court deems equitable, just and proper; and

E. Award Plaintiffs and Class members damages in excess of 15 million dollars or in an amount to be determined according to proof.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues that may be tried and decided by jury.


Respectfully submitted,

By: _____

Attorneys for Plaintiff


Patrick C. Dowd
Dowd & Dowd, Ltd.
227 West Monroe Street—Suite 2650
Chicago, Illinois 60606
Tel: (312) 704-4400
Fax: (312) 704-4500
patrickdowd@dowdanddowd.com

Edward X. Clinton, Jr.
The Clinton Law Firm
111 West Washington Street-Suite 1437
Chicago, Illinois 60602
Tel: (312) 357-1515
ed@clintonlaw.net