IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOYA DIXON-RANDOLPH and CATHERINE PRESTIGIACOMO, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO and CHICAGO PARKING METERS, LLC,<br><br>Defendants. | Case No. 1:19-cv-01422<br><br>Hon. John J. Tharp, Jr. |

**MEMORANDUM IN SUPPORT OF CHICAGO PARKING METERS, LLC'S
RULES 12(b)(1) AND 12(b)(6) MOTION TO DISMISS
<u>PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT</u>**

**I.      Introduction and Overview**

Plaintiffs Toya Dixon-Randolph and Catherine Prestigiacomo's single claim against Chicago Parking Meters, LLC ("CPM") for unjust enrichment is flawed in several respects and should be dismissed.

To begin, for two independent reasons, the Court lacks subject matter jurisdiction over Plaintiffs' claim against CPM, so the claim should be dismissed under Rule 12(b)(1).

- *First*, Plaintiffs lack Article III standing to assert their claim against CPM because they have not suffered any injury traceable to CPM's alleged conduct. Plaintiffs allege that CPM's ParkChicago mobile application ("App."), which drivers can use to pay for on-street parking through a mobile phone, allows users to extend their parking period beyond "Zone Maximums" established by the City. That supposedly exposes parkers to a risk of being issued a parking ticket, despite having paid for parking. But Plaintiffs do not claim to have actually experienced this—they do not allege they ever paid for parking time in excess of that permitted

1

by a Zone Maximum, let alone received a ticket as a result. The same is true of Plaintiffs' two other scattershot, single-sentence allegations against CPM—that CPM charges a convenience fee for use of the App. in some circumstances, and supposedly somehow generates revenue from balances residing in App. accounts. Plaintiffs do not claim to have ever paid a convenience fee or otherwise suffered any articulable injury in relation to either allegation.

- *Second*, Plaintiffs' invocation of federal subject matter jurisdiction in this case is predicated on their U.S. constitutional law claims against the City relating to whether parking ticket fines are excessive. Plaintiffs' separate claim against CPM arises under Illinois law and involves allegations about the App. that have nothing to do with the size of parking ticket fines. Although Plaintiffs assert supplemental jurisdiction as to their claim against CPM, that claim does not form part of the "same case or controversy" as Plaintiffs' federal law claims against the City. Consequently, there is no supplemental jurisdiction, and thus no subject matter jurisdiction, over Plaintiffs' claim against CPM.

Should the Court proceed to consider the sufficiency of Plaintiffs' allegations, their claim against CPM should be dismissed under Rule 12(b)(6) for failure to satisfy applicable pleading standards. Because, as noted above, Plaintiffs do not claim they have ever actually experienced or been impacted by their thinly-pled hypothetical scenarios concerning the App., they have not pled a "detriment"—i.e., that they suffered any damages—as required to plead unjust enrichment. Aside from the lack of damages, Plaintiffs' contentions about the App. are otherwise entirely conclusory and unsupported by facts plausibly alleging that CPM has been enriched through any "unjust" conduct, as is also required to plead unjust enrichment.

For these reasons and those described below, CPM respectfully requests dismissal of Plaintiffs' unjust enrichment claim against CPM.

## II. Background

The gist of Plaintiffs' Complaint is that the City assesses fines for overstaying on-street parking meters in amounts that are allegedly "excessive." Compl. ¶¶ 45, 54.[1] Plaintiffs do not claim that CPM bears responsibility for parking violation fine amounts. Rather, fine amounts are set by ordinance, *id.* ¶ 48, and CPM does not receive any money from fines. *Id.* ¶¶ 34, 41. CPM features in the body of Complaint only in superfluous background concerning the agreement between CPM and the City pursuant to which CPM manages and collects revenues from drivers who pay to use the metered parking system. *Id.* ¶¶ 33–42.

From their allegations of excessive fines, Plaintiffs assert U.S. constitutional claims against the City as to which CPM is not named as a defendant. Compl. ¶¶ 110–60. Based on their federal law claims, Plaintiffs invoke this Court's subject matter jurisdiction pursuant to "28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights)." *Id.* ¶ 13. Plaintiffs also assert an unjust enrichment claim against the City for allegedly assessing fines at rates higher than what is permitted by ordinance. *Id.* ¶¶ 179–91. As to Plaintiffs' state law claims, they assert the Court's "supplemental jurisdiction . . . pursuant to 28 U.S.C. § 1367(a)." *Id.* ¶ 14.

Unrelated to the concept of allegedly excessive parking violation fines, Count V of the Complaint asserts against CPM a claim for unjust enrichment in relation to CPM's mobile payment App. Compl. ¶¶ 161–78. Plaintiffs allege within that count that the App. permits users to pay to extend their parking time beyond "Zone Maximum" time limits—the maximum amount of time that a vehicle may continuously park in a particular parking zone pursuant to City ordinance— exposing users to tickets from the City despite paying for parking. *Id.* ¶¶ 161–78. The Complaint does not supply any factual elaboration for this theory—such as how parkers make use of the App.,

---

[1] Plaintiffs' operative Second Amended Class Action Complaint is referenced herein as "Complaint" and cited "Compl."

3

whether or how enforcement personnel evaluate the length of time a vehicle has remained in a parking Zone, or the frequency or circumstances in which this scenario—using the App. to pay for time beyond a Zone Maximum—can occur. Indeed, Plaintiffs do not allege facts describing that anyone has ever actually been ticketed for exceeding a Zone Maximum despite having paid for parking time through the App. Moreover, despite suggesting that users of the App. could unwittingly exceed the maximum permitted parking time, Plaintiffs concede, "A meter's limit is posted on the meter and indicated within the mobile pay application, ParkChicago App." *Id.* ¶ 27.

Plaintiffs also assert that CPM is "unjustly enriched by charging a 'convenience' fee of $.35 on parkers who request a shorter time limit," Compl. ¶ 176, and "by generating revenue from individuals 'account balances' for those using the Chicago parking app." *Id.* ¶ 177. Aside from those barebones assertions, the Complaint does not contain any factual support or explanation for either ostensible unjust enrichment theory.

Plaintiffs purport to bring their unjust enrichment claim against CPM as a class action on behalf of an "Extension Sub-Class," defined to comprise "[a]ll persons who paid via the ParkChicago App to extend their meter time past the Zone Maximum." Compl. ¶ 95. Yet, Plaintiffs do not claim membership in that class or that they paid for parking in excess of a Zone Maximum, let alone suffered any adverse consequences as a result. Rather, Plaintiff Dixon-Randolph alleges that at times unspecified, she was issued parking tickets after parking her vehicle in metered spaces beyond the time for which she paid—time that she acknowledges "was below the Zone Maximum." *Id.* ¶¶ 78–88. Plaintiff Prestigiacomo allegedly received a ticket for similarly overstaying her paid parking time, with no mention of whether she exceeded a Zone Maximum. *Id.* ¶¶ 89–93. Nor does either Plaintiff allege she paid a convenience fee or somehow

4

suffered any consequence associated with CPM's supposed "generat[ion] of revenue" from their App. account balances—assuming they held such balances, which is also not alleged.

### III. Argument

#### A. Plaintiffs' Claim Against CPM Should Be Dismissed Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).[2] Plaintiffs, as the parties asserting federal subject matter jurisdiction, bear the burden of establishing that jurisdiction exists. *Farnik v. FDIC*, 707 F.3d 717, 721 (7th Cir. 2013). As concerns their claim against CPM, Plaintiffs have failed to meet that burden in two separate respects, either of which on its own requires dismissal under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1).

##### 1. Plaintiffs lack Article III standing because they have suffered no injury in fact that is fairly traceable to CPM's alleged conduct.

It is Plaintiffs' burden to demonstrate standing. *See Kathrein v. City of Evanston*, 636 F.3d 906, 914 (7th Cir. 2011). If standing is lacking, the case must be dismissed for lack of subject-matter jurisdiction. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). To establish standing, a plaintiff must show "an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" *Bank of Am. Corp. v. City of Miami*, ⸺ U.S. ⸺, 137 S.Ct. 1296, 1302 (2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. ⸺⸺, 136 S.Ct. 1540, 1547 (2016)). "Injury in fact" requires that the plaintiff "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1548. "When an injury is threatened in the

---

[2] Unless otherwise indicated, internal citations and quotations are omitted.

future, the risk of harm must be substantial and more than speculative." *Otrompke v. Hill*, 592 F. App'x 495, 498 (7th Cir. 2014). In sum, an injury must "actually exist." *Spokeo*, 136 S.Ct. at 1548.

Plaintiffs have not pled injury in fact relating to their unjust enrichment claim against CPM. Although Plaintiffs contend, evidently as the primary basis for their claim, that the App. "permits users to extend parking time without movement of the vehicle past the Zone Maximum upon payment of additional fee," Compl. ¶ 168, they claim no injury traceable to that allegation. Neither Plaintiff claims to have paid for parking in excess of a Zone Maximum, nor if they did, to have received a ticket or paid a fine. In fact, Plaintiff Dixon-Randolph acknowledges that "[t]he time Plaintiff paid to use the meter space was below the Zone Maximum." Compl. ¶¶ 79–81. Plaintiff Prestigiacomo, for her part, makes no mention of the Zone Maximum when describing her receipt of parking tickets, and in any event does not claim to have even used the App. *Id*. ¶¶ 89–93.

Although Plaintiffs purport to assert their claim against CPM on behalf of an "Extension Sub-Class" comprised of individuals who, unlike Plaintiffs, allegedly used the App. to purchase parking time exceeding a Zone Maximum, *id*. ¶¶ 95; Count V, "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share." *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002); *see also In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 810 (N.D. Ill. 2017) ("[N]amed plaintiffs who represent a class must allege and show that they have personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."). Thus, Plaintiffs, who have no standing in their

6

own right for lack of injury, cannot secure standing by purporting to represent the "Extension Sub-Class" of which they are not members.

Lastly, Plaintiffs plead no injury in fact traceable to their allegations that CPM is "unjustly enriched by charging a 'convenience' fee of $.35 on parkers who request a shorter time limit," Compl. ¶ 176, and "by generating revenue from individuals 'account balances' for those using the Chicago parking app." *Id*. ¶ 177. Plaintiffs do not allege they paid any such convenience fees or suffered any injury involving CPM's alleged "generat[ion] of revenue" from any App. account balances they ever held. Plaintiffs therefore lack standing, and on that basis the Court should dismiss their claim against CPM for lack of subject matter jurisdiction.

> **2. Plaintiffs' claim against CPM is not so related to Plaintiffs' federal law claims against the City that they "form part of the same case or controversy," so there is no supplemental jurisdiction over that claim.**

In order for a federal district court to exercise subject matter jurisdiction over a state law claim, there must be either diversity jurisdiction, or a claim arising under federal law in relation to which the court can exercise supplemental jurisdiction over the state law claim. *See Seymour v. Village of Glenview*, 2019 WL 1505411 at *4 (N.D. Ill. April 5, 2019). Plaintiffs invoke federal question jurisdiction for their U.S. constitutional claims against the City and supplemental jurisdiction pursuant to 28 U.S.C § 1367(a) as to their state law claims, including their unjust enrichment claim against CPM. Compl. ¶¶ 13–14. However, § 1367 supplies jurisdiction only for state law "claims that are so related to" claims arising under federal law "that they form part of the same case or controversy," 28 U.S.C. § 1367(a), which is not the case with respect to Plaintiffs' claim against CPM.

Two claims "form part of the same case or controversy" only "if they derive from a common nucleus of operative facts." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007). It is not enough that a state law claim shares with a federal claim alleged background facts;

7

the shared facts must be "operative." *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011, 1018 (N.D. Ill. 2009). That is to say, the "facts linking state to federal claims . . . must be relevant to the resolution of the federal claims." *United States v. Clark*, 2010 WL 476637, at *1 (N.D. Ill. Feb. 3, 2010); *see also Trilithic, Inc. v. Wavetek U.S. Inc.*, 6 F. Supp. 2d 803, 806 (S.D. Ind. 1998) (dismissing state law claims for lack of supplemental jurisdiction because "the factual connection occurs among the background facts, as opposed to the operative facts"); *Wisey's #1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 190 (D.D.C. 2013) (finding insufficient "legal overlap" and "factual overlap" where "[s]tate common law claims . . . only relate generally to federal claims through a broader dispute and do not share any operative facts [and thus] are insufficient for supplemental jurisdiction"); *Taylor v. District of Columbia*, 626 F. Supp. 2d 25, 29 (D.D.C. 2009) (finding no supplemental jurisdiction where resolution of federal civil rights claim "would provide little insight" into state claim); *Ning Ye v. Holder*, 667 F. Supp. 2d 103, 104–05 (D.D.C. 2009) (finding no supplemental jurisdiction because "the events that trigger[ed] liability" for state and federal defendants "[were] completely separate").

Here, Plaintiffs' state law claim against CPM does not derive from a nucleus of operative facts shared in common with Plaintiffs' federal constitutional claims against the City. Nor do the facts bearing upon Plaintiffs' claims against the City carry implications for Plaintiffs' unjust enrichment claim against CPM. Plaintiffs' claim against CPM rests on allegations concerning the functioning of the App. and alleged monies that CPM derives from the operations of the App. Compl. ¶¶ 162–78. Plaintiffs' federal claims against the City, by stark contrast, rest on allegations concerning the size and proportionality of parking fines imposed by the City. *Id*. ¶¶ 110–60.

To be sure, the Complaint contains background allegations about CPM's agreement with the City to operate the metered parking system, Compl. ¶¶ 2–6, 33–42, and Plaintiffs' claims in

8

general concern on-street parking. *Id*. ¶¶ 16–31. But Plaintiffs' operative allegations against CPM's alleged "unjust" activities involving the App., on the one hand, and their operative allegations against the City about the supposed constitutionally excessive size of parking fines, on the other, are distinct. *Compare id*. ¶¶ 167–77 (Plaintiffs' allegations that CPM is unjustly enriched through operation of the App.) with *id*. ¶¶ 110–60, 179–91 (Plaintiffs' allegations against the City relating to the size of parking fines). And, neither has anything directly to do with the metered parking system agreement between CPM and the City that is alleged in background. *Id*. ¶¶ 2–3, 33–42. That distinction—that the allegations shared among Plaintiffs' state and federal claims concern strictly background and not the operative factual allegations forming the basis for those claims—"is crucial to whether the Court has supplemental jurisdiction," *Trilithic*, 6 F. Supp. 2d at 806, and means that the requirements of § 1367 are not satisfied in this case.

For that additional reason, the Court should dismiss Plaintiffs' claim against CPM for lack of subject matter jurisdiction.

> **B.   Plaintiffs' Claim Against CPM Should Be Dismissed Under Rule 12(b)(6) for Failure to Sufficiently Plead the Elements of Unjust Enrichment**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

In Illinois, "[u]njust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust." *Cleary v. Phillip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Thus, a claim for unjust enrichment requires a plaintiff to sufficiently plead that the defendant "retained a benefit to the plaintiff's detriment," and that the defendant's "retention of the benefit" was "unjust" because it "violate[d] fundamental principles of justice, equity, and good conscience." *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1043 (Ill. App. Ct. 2015). Plaintiffs have not sufficiently pled those elements.

### 1. Plaintiffs do not plead that they have suffered any "detriment" related to CPM's alleged conduct.

"[T]o recover under an unjust enrichment theory, a plaintiff must allege that the defendant withheld a benefit to her detriment." *Miszczyszyn v. JPMorgan Chase Bank, N.A.*, No. 18-CV-3633, 2019 WL 1254912, at *5 (N.D. Ill. Mar. 19, 2019) (citing *Cleary*, 656 F.3d at 517); *see also Devco v. T10 Meltel, LLC*, 237 F. Supp. 3d 804, 812 (N.D. Ill. 2017) (plaintiff must plead "a detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit"). Neither Plaintiff adequately pleads any "detriment" stemming from any of their allegations concerning CPM.

As set forth above, whereas Plaintiffs claim CPM's App. permits users to pay for parking in excess of Zone Maximums and become exposed to parking violation tickets, they do not allege that they ever paid for parking in excess of a Zone Maximum or received a ticket for doing so. *Cf.* Compl. ¶¶ 78–93 (alleging that Plaintiffs received parking tickets, but Plaintiff Dixon-Randolph admits she paid for less time than permitted by a Zone Maximum, and Plaintiff Prestigiacomo does

10

not make any allegations about exceeding a Zone Maximum, or even that she used the App.). In other words, Plaintiffs' claim is strictly hypothetical and speculative.

Courts routinely dismiss unjust enrichment claims for similar failures to sufficiently plead a "detriment"—indeed they do so in circumstances involving allegations more substantial than those made here. *See, e.g.*, *Miszczyszyn*, 2019 WL 1254912, at *5 (plaintiff's allegations that she was assessed, but had not paid, property inspection fee, and had incurred attorney fees challenging inspection fees in foreclosure action, were not sufficient to plead cognizable detriment); *Overstreet v. CIT Mortgage Home Loan Trust 2007-1*, 2017 WL 1022079, at *4–*7 (N.D. Ill. March 16, 2017) (dismissing unjust enrichment claims because plaintiff did not allege she actually paid fee assessed in relation to overdue mortgage payments); *Maddox v. ADT Sec. Servs., Inc.*, No. 10 C 3778, 2011 WL 43037, at *1 (N.D. Ill. Jan. 6, 2011) (dismissing unjust enrichment claim where plaintiff had not paid disputed charges); *Galvan v. Nw. Memorial Hosp.*, 888 N.E.2d 529, 541–42 (Ill. App. Ct. 2008) (no unjust enrichment claim when defendant asserted a lien but the court had not yet enforced it).

Similarly, Plaintiffs do not plead any "detriment" associated with their allegations that CPM charges in some circumstances a $0.35 convenience fee for use of the App. or somehow "generat[es] . . . revenue" from their App. account balances. Compl. ¶¶ 176–77. Neither Plaintiff claims to have paid a convenience fee or held an account balance with the App. (Plaintiff Prestigiacomo does not even claim she used the App.) Nor, assuming a Plaintiff did hold an account balance with the App., does the Complaint explain what detriment they have suffered as a consequence, irrespective of whether CPM used that balance to generate revenue.

Plaintiffs' failure to sufficiently plead a "detriment" is grounds for dismissal of their unjust enrichment claim.

> **2. Even if Plaintiffs have pled that CPM retained any benefit to their "detriment"—which they have not—Plaintiffs have not plausibly pled that CPM did so "unjustly."**

To state an unjust enrichment claim, Plaintiffs must additionally plead that CPM's purported retention of a benefit to Plaintiffs' "detriment" was "unjust"—i.e., that CPM engaged in conduct that was "unlawful or improper . . . as defined by law, such as fraud, duress, or undue influence." *Martis v. Grinnell Mut. Reinsurance Co.,* 905 N.E.2d 920, 928 (Ill. App. Ct. 2009); *see also Cleary*, 656 F.3d at 517 ("What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute.").

Other than to claim without elaboration that the App. permits users to extend their parking time beyond Zone Maximums, the Complaint does not even purport to allege facts that would plead that CPM acted "unjustly." There are no facts pled as to the circumstances of how parkers use the App., let alone specifically how CPM operates the App. so as to permit users to inadvertently extend parking time beyond the maximum, or how parking enforcement personnel evaluate how long a vehicle has been parked in a particular zone, as opposed to simply determining whether the vehicle has paid for parking. To the contrary, the only additional facts pled as to this subject undermine any notion that App. users are duped into paying for more time than is permitted. Specifically, Plaintiffs acknowledge that both the physical meter and the App. itself inform parkers of how long they are permitted to remain in a space. Compl. ¶ 27 ("A meter's limit is posted on the meter and indicated within the mobile pay application, ParkChicago App.").

Additionally, the Complaint does not allege any facts describing how CPM's mere charging of a convenience fee is "unjust," as required to state an unjust enrichment claim. The Complaint contains no allegations describing any impropriety associated with the convenience fee; indeed, it is only mentioned once, in a sentence asserting without elaboration that CPM "is unjustly

enriched by charging a 'convenience' fee of $.35 on parkers who request a shorter time limit." Compl. ¶ 176. The same is true of Plaintiffs' allegation that CPM is unjustly enriched "by generating revenue from individuals 'account balances' for those using the Chicago parking app." *Id.* ¶ 177. That allegation stands alone, unaccompanied by any additional information or context, let alone factual allegations describing conduct by CPM that was "unlawful or improper . . . as defined by law, such as fraud, duress, or undue influence." *Martis*, 905 N.E.2d at 928.

Thus, Plaintiffs' failure to plead that CPM retained any benefit "unjustly" is an additional flaw that independently requires dismissal of their unjust enrichment claim against CPM.

    **C.**  **The Voluntary Payment Doctrine also bars Plaintiffs' claim.**

The voluntary payment doctrine provides that "money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." *Keating v. City of Chicago*, 2013 IL App (1st) 112559-U, ¶ 61. "Under this doctrine, a plaintiff who voluntarily pays money in reply to an incorrect or illegal claim of right cannot recover that payment unless he can show fraud, coercion, or mistake of fact." *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 667 (7th Cir. 2001) (additionally explaining that "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution"); *see also Harris v. ChartOne,* 841 N.E.2d 1028, 1031 (Ill. 2005) ("It has been a universally recognized rule that absent fraud, duress, or mistake of fact, money voluntarily paid on a claim of right to the payment cannot be recovered on the ground that the claim was illegal."). The doctrine "applies to any cause of action which seeks to recover a payment on a claim of right, whether that claim is premised on a contractual relationship or a statutory obligation . . . ." *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010).

13

On the facts as pled in the Complaint, the voluntary payment doctrine bars Plaintiffs' unjust enrichment claim against CPM for a simple reason: Plaintiffs' claim rests on the contention that the App. supposedly permits users to extend their parking time beyond the maximum allowed, yet they admit, "A meter's limit is posted on the meter and indicated within the mobile pay application, ParkChicago App." Compl. ¶ 27. Certainly, therefore, Plaintiffs have not and cannot plead "fraud, coercion, or mistake of fact" concerning how long they were permitted to park their vehicles in metered parking spaces. *Randazzo*, 262 F.3d at 668.

Accordingly, the voluntary payment doctrine is an additional basis on which the Court should dismiss Plaintiffs' unjust enrichment claim against CPM.

### IV. Conclusion

For the foregoing reasons, CPM respectfully requests that the Court dismiss Plaintiffs' unjust enrichment claim against CPM with prejudice.

Dated: July 3, 2019                          Respectfully submitted,

                                             */s/ Joseph L. Motto*
                                             Robert Y. Sperling
                                             Joseph L. Motto
                                             Matthew D. Moyer
                                             Tyler C. Richards
                                             Winston & Strawn LLP
                                             35 W. Wacker Dr.
                                             Chicago, Illinois 60601
                                             T. (312) 558-5600
                                             F. (312) 558-5700
                                             rsperling@winston.com
                                             jmotto@winston.com

                                             *Counsel for Chicago Parking Meters, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 3, 2019, the foregoing document was served on all counsel of record via the Court's ECF system.

/s/ *Joseph L. Motto*