IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOYA DIXON-RANDOLPH and CATHERINE PRESTIGIACOMO on behalf of themselves and all others similarly situated | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 19-CV-1422 |
| | ) | Honorable John J. Tharp |
| CITY OF CHICAGO and CHICAGO PARKING METERS, LLC, | ) ) ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs were issued a standard $50 or $65 City parking ticket when they overstayed the parking meter. They contend, on behalf of themselves and a putative class, that this is an affront to their constitutional rights – the Eighth Amendment's prohibition on excessive fines, and the Fourteenth Amendment's equal protection and due process clauses. Plaintiffs sue the City under section 1983 for these violations in Counts I – IV.

These claims should be dismissed with prejudice because they are time barred. Section 1983 claims are subject to a two-year statute of limitations, and Plaintiffs received their tickets in 2015 and 2016, more than two years before filing this action.

Moreover, even if the claims were not barred, they fail on the merits. Counts I and II are facial and as applied challenges, respectively, brought under the Eighth Amendment's Excessive Fines Clause. Count I asserts that it is always unconstitutionally excessive to issue a $50 or $65 ticket for an unpaid or expired meter, and Count II focuses on situations where the ticket is issued to vehicles that overstay an expired meter by minutes. Both counts fail to state a claim. These modest parking fines, which have been set by the legislature in its discretion, are presumed constitutional, and, as a matter of law, they are not grossly disproportional to offense.

Plaintiffs' equal protection (Count III) and due process (Count IV) claims fare no better. Plaintiffs contend that the City violates equal protection because it imposes a parking fine immediately upon a violation, whereas drivers on the Chicago Skyway toll road have a 7-day grace period to pay a missed toll before a penalty is imposed. Similarly, Plaintiffs contend that the lack of a grace period for parking fines violates due process. These claims fail because there is a rational basis for not providing a grace period for parking violations: a grace period would induce vehicles to stay in an expired space and pay for their time later, which is contrary to the

City's goal of encouraging vehicles to vacate parking spaces in real time, so that other vehicles may use the space.

Finally, in Count VI, Plaintiff Prestigiacomo brings a state law claim for unjust enrichment against the City, alleging that she was issued a $65 ticket when her parking violation warranted only a $50 ticket. That claim should be dismissed for lack of supplemental jurisdiction in light of the dismissal of Plaintiffs' federal claims, and it also fails on the merits because Prestigiacomo voluntarily paid her ticket rather than exhaust her remedies under state law for contesting it. For these reasons (and others discussed below), all counts against the City should be dismissed with prejudice.

## BACKGROUND

The relevant allegations are simple. The City maintains a parking meter system comprising approximately 36,000 parking spaces throughout the City. See Second Amended Complaint ("SAC"), Dkt. 15, ¶ 16. Plaintiffs focus on two aspects of the system.

The first is the City's requirement that motorists pay a fee to use a metered parking space. See id. ¶ 19. The rates vary based on location. Id. ¶ 21. For most areas outside the Central Business District ("CBD"), the rate is $2 per hour from 8:00 am to 10:00 pm. Id. ¶ 22. In the portion of the CBD outside the Loop, rates are $4 per hour from 8:00 am to midnight. Id. ¶ 23. In the portion of the CBD inside the Loop, rates are $6.50 per hour from 8:00 am to 9:00 pm and $3.50 per hour otherwise. Id. ¶ 24. The other focus of Plaintiffs' challenge is the imposition of maximum time limits on how long a car can remain in a parking space, even if the owner would be willing to continue to pay the meter rate. Id. ¶ 26.

If a person parks at a metered space during a metered time period and does not pay, or pays for time but overstays the time for which they paid (which could include overstaying the

maximum time limit permitted at the space), they are subject to a fine as established under the Municipal Code of Chicago. These fines are $50 for violations outside the CBD and $65 for violations inside the CBD. Id. ¶¶ 32, 48. The City charges these fines regardless of how long a vehicle overstays the meter, and does not allow an owner to "rectify or mitigate" the violation by paying a lesser amount keyed to the length of the overstay, such as a *pro rata* fee determined by multiplying the number of minutes of the overstay by the per-minute rate of the hourly meter fee. Id. ¶¶ 47, 51, 53, 62.

The City uses this system to "achieve parking turnover and availability which facilitates traffic management (i.e. reduces congestion), promotes local business and controls for pollution." SAC ¶ 16. The fees for using a parking space "incentivize parkers to spend less time in a parking space." Id. ¶ 19. And the maximum time limits on use of a space "force turnover"; without them, a car owner could "decide to continuously bare the cost of the meter in exchange for use of the space," which amounts to "essentially monopolizing the space." Id. ¶ 26.

Plaintiff Dixon-Randolph received two parking tickets. One ticket, issued on April 15, 2015, was for overstaying the amount of time she paid for in a parking space outside of the CBD, for which she was fined $50. Id. ¶¶ 78–82. She paid this fine. Id. ¶ 83. The second ticket, issued on November 21, 2016, was for overstaying the time she paid for a meter in the CBD, for which she was fined $65. Id. ¶¶ 84–88.

Plaintiff Prestigiacomo alleges that on November 9, 2015, she parked in a metered space outside of the CBD and she received a ticket for overstaying her meter time. Id. ¶¶ 89–91. She was issued a $65 CBD ticket despite not being parked in a CBD zone, and she paid the ticket. Id. ¶¶ 92, 93.

**ARGUMENT**

**I.    PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED.**

In Counts I – IV, Plaintiffs assert four claims under section 1983 for alleged violations of their constitutional rights, based on the parking tickets Dixon-Randolph received in April 2015 and November 2016, and Prestigiacomo received in November 2015. SAC ¶¶ 78, 84, 89. These claims are time barred. The statute of limitations for section 1983 claims in Illinois is two years. See Gekas v. Vasiliades, 814 F.3d 890, 894 (7th Cir. 2016). And Plaintiffs' claims accrued on the dates they received the tickets because, at that time, they were aware of, or should have known, the fact that they had been fined by the City and the amount of the fine. See Savory v. Lyons, 469 F.3d 667, 672 (7th Cir. 2006) (section 1983 claims accrue when a plaintiff knows or has reason to know of the injury that is the basis of her claim). Yet Dixon-Randolph filed the original complaint in this case on February 27, 2019, Dkt. 1, more than two years after she received either ticket. Similarly, even assuming that Prestigiacomo's claims relate back to the filing of the original complaint, her claims are barred too, as she received her ticket more than three years before. "[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." Logan v. Wilkins, 644 F.3d 577, 582 (7th Cir. 2011). See also Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009). Plaintiffs' section 1983 claims should therefore be dismissed with prejudice because they are time barred.

**II.   PLAINTIFFS' FEDERAL CLAIMS FAIL ON THE MERITS.**

    **A.    Plaintiffs Fail To State A Facial Challenge Under The Excessive Fines Clause (Count I).**

Count I presents a facial challenge under the Excessive Fines Clause to the issuance of parking tickets to drivers who overstay parking meters or do not pay them at all. The claim is

4

facial, rather than as applied, because it does not allege any particular facts regarding application of the fines in particular situations; it essentially contends that the $50 and $65 parking fines are always excessive. The facial nature of the claim is further shown by Plaintiffs' definition of the putative class, which they define, in relevant part, as "[a]ll persons who were assessed and/or paid" the parking fines, without regard to particular circumstances. See SAC ¶ 94. The mere fact of receiving a ticket authorized by ordinance is, under Plaintiffs' theory, all that is needed to make one a member of the class and to make the City liable.

Assuming that the Excessive Fines Clause applies to these parking fines,[1] Plaintiffs cannot show that they are facially invalid. Facial challenges are the most difficult to assert; to succeed, a plaintiff must show that the law is unconstitutional in all of its applications. See United States v. Salerno, 481 U.S. 739, 745 (1987). This means that Plaintiffs must establish "that no set of circumstances exists under which the [law] would be valid." Id. at 745.

Plaintiffs cannot do this. Because the parking fines have been set by a legislative body (the City Council) and are fixed by ordinance, they are entitled to a "strong presumption of constitutionality." United States v. Malewicka, 664 F.3d 1099, 1106 (7th Cir. 2011).[2] Fines are unconstitutionally excessive only when they are "grossly disproportional" to the gravity of the offense. United States v. Bajakajian, 524 U.S. 321, 334 (1998). To make that determination,

---

[1] The Excessive Fines Clause applies when government action constitutes "punishment for some offense," as distinguished from "remedial sanctions" compensating the government for a loss. United States v. Bajakajian, 524 U.S. 321, 328–29 (1998). Thus, the Clause can apply to civil sanctions that serve, "at least in part, retributive or deterrent purposes." Towers v. City of Chicago, 173 F.3d 619, 624 (7th Cir. 1999). Here, while Plaintiffs allege that the fines serve, in part, a deterrent and retributive function, see SAC ¶¶ 49, 113, 131, they also allege that the fines serve various other purposes, see SAC ¶ 16, and it is reasonable to conclude that parking fines, at least in part, help compensate the City for the harms caused by unlawful parking.

[2] Indeed, courts routinely uphold fines that fall within the bounds set by a legislative body. See Cripps v. Louisiana Dep't of Agric. & Forestry, 819 F.3d 221, 234 (5th Cir. 2016); Newell Recycling Co. v. U.S. E.P.A., 231 F.3d 204, 210 (5th Cir. 2000).

courts consider three factors: (1) the essence of an offense and the harm caused thereby; (2) whether the offender fits into the class of persons for whom the statute was principally designed; and (3) how the amount of the fine compares to the gravity of the offense. See Malewicka, 664 F.3d at 1104–08.

Plaintiffs come nowhere close to showing that the City's parking fines are always grossly disproportionate, no matter how long an overstay. Indeed, the modest $50 or $65 fine easily satisfies the Malewicka factors. First, the essence of the offense is parking in a meter-regulated space unlawfully, and the harm from a violation includes not only lost meter fees, but also injury to the public through disruption to the flow of traffic, increased congestion and pollution, and the unavailability of parking for other drivers. See SAC ¶ 16. See also Van Harken v. City of Chicago, 103 F.3d 1346, 1352 (7th Cir. 1997) (enforcement of parking laws is "designed to facilitate traffic flow"); Sutton v. City of Milwaukee, 672 F.2d 644, 646 (7th Cir. 1982) ("Parking regulations have a valid purpose."); U.S. ex rel. Bunk v. Gosselin World Wide Moving, N.V., 741 F.3d 390, 409 (4th Cir. 2013) ("For purposes of our Eighth Amendment analysis . . . the concept of harm need not be confined strictly to the economic realm."). The harm also includes the more direct costs to the City of enforcing its parking laws, such as salaries for enforcement personnel and administrative hearing officers who hear ticket challenges.

Second, Plaintiffs fit squarely within the class of people the City's parking laws are designed to reach: people who use metered parking spaces in violation of the City's restrictions.

Third, in light of the harms listed above, a mere $50 or $65 ticket is reasonable, especially when considering that the amount needs to be high enough to create a deterrent. As the Seventh Circuit has explained elsewhere in rejecting an excessive fines claim against the City, "there has to be a nontrivial penalty for violating [an ordinance] in order to induce even

minimal compliance." Disc. Inn, Inc. v. City of Chicago, 803 F.3d 317, 320 (7th Cir. 2015). See also Towers v. City of Chicago, 173 F.3d 619, 626 (7th Cir. 1999) ("[T]he City, in fixing the [fine] amount, was entitled to take into consideration that the ordinances must perform a deterrent function.").

For all these reasons, the fines here are constitutional. Indeed, they fall comfortably within the range of parking fines that have been upheld by other courts. See, e.g., Pimentel v. City of Los Angeles, No. CV 14-1371 FMO (EX), 2018 WL 6118600, at *8 (C.D. Cal. May 21, 2018) ("Even if the harm imposed [for overstaying a parking meter] is minimal, the $63 penalty is not grossly disproportionate to the harm as to violate the Eighth Amendment or the California Constitution."); Popescu v. City of San Diego, No. 06CV1577-LAB LSP, 2008 WL 220281, at *4 (S.D. Cal. Jan. 25, 2008) ($47 parking ticket that doubled to $94 after 30 days and then went to $104 not excessive); Cain v. Bureau of Admin. Adjudication, No. CV 16-613, 2016 WL 7156392, at *5 (E.D. Pa. Dec. 8, 2016) ($51 parking ticket not excessive). And they are much smaller than other fines that have been upheld against Eighth Amendment challenge. See Disc. Inn, 803 F.3d 317 (fine range of $600 to $1,200 for overgrown weeds, and $300 to $600 for unfenced lots); Towers, 173 F.3d at 626 ($500 fine against owner of vehicle that is used by another for illicit purpose); Clark v. Humane Soc. of Carroll Cty., Inc., No. CIV.A. WMN-11-108, 2011 WL 2791041, at *5 (D. Md. July 13, 2011), aff'd, 468 F. App'x 342 (4th Cir. 2012) ($300 fine related to licensing, restraint, and care of domestic animals); Mills v. City of Grand Forks, 614 F.3d 495, 501 (8th Cir. 2010) ($150 traffic fine for careless driving). Count I should therefore be dismissed with prejudice.

**B.     Plaintiffs Fail To State An As-Applied Excessive Fines Claim (Count II).**

In Count II, Plaintiffs focus on situations where the length of the overstay is a few minutes, such that the ratio of the fine to the cost of the overstay (as determined by multiplying

7

the length of the overstay by the per-minute parking rate applicable to the spot) exceeds 100 to 1, or as Plaintiffs call it, is a "triple-digit multiplier." Even as applied to these scenarios, the parking fines are not unconstitutionally excessive.

The main problem with Plaintiffs' theory is that it demands a level of precision in setting traffic fines that the Excessive Fines Clause simply does not require. The standard is not "strict proportionality" but "gross disproportionality." Bajakajian, 524 U.S. at 336. The analysis recognizes that "'judgments about the appropriate punishment for an offense belong in the first [instance] to the legislature' and that 'any judicial determination regarding the gravity of a particular . . . offense will be inherently imprecise.'" U.S. ex rel. Tyson v. Amerigroup Illinois, Inc., 488 F. Supp. 2d 719, 744 (N.D. Ill. 2007) (quoting Bajakajian, 524 U.S. at 336)). These principles are rooted in the "broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 290 (1983).

Indeed, there will always be cases where one is fined for just barely overstepping a law – for instance, driving a few miles over the speed limit when no other cars are around, or being a few days late on renewing one's license plates. Tickets are issued daily across the country for these sorts of violations; they are not all unconstitutional simply because one might characterize the violation as *de minimis*, or as not strictly proportional to the full fine. Cf. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 315–16 (1993) ("Defining the class of persons subject to a regulatory requirement . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.") (internal quotation marks and citation omitted).

8

The three-factor test for excessiveness confirms this. First, even a short parking overstay can bring about the harms caused by illegal parking discussed above. See supra at 6; SAC ¶ 16. Indeed, during even just a 5 minute overstay, numerous cars looking for parking would be forced to drive past the space and search elsewhere. Second, short overstay drivers are no less the type of offender at whom the ordinances are aimed: people who use meter spaces without paying for all of the time they are parked there.

Third, is it reasonable for the City to impose the full fine even for short overstays. As discussed above, the City has a legitimate interest in promoting strict compliance with its parking laws, and the full fine serves as an important deterrent. Indeed, when an overstay is just a few minutes, it less likely that an enforcement agent will discover the overstay before the car drives away, meaning that the expected cost of the fine to the driver is lower than the nominal $50 or $65 fine amount. The City therefore has an interest in maintaining the full nominal amount, for a lower nominal amount would lower the expected cost to the motorist even further, thereby decreasing the ticket's deterrent effect. See Disc. Inn, 803 F.3d at 320 (explaining that, in setting fine amounts, it is appropriate to consider the probability that a violation would be detected when considering the expected (as distinct from the nominal) expense of a violation and the impact of that expected expense on the deterrent value of the ordinance); Saukstelis v. City of Chicago, 932 F.2d 1171, 1172 (7th Cir. 1991) (explaining that "[i]f drivers expect steep discounts . . . they will park where they please"). A $50 or $65 parking fine is therefore not grossly disproportionate in light of the City's interests, even in the case of a short overstay.[3]

---

[3] Plaintiffs' focus on the actual length of the overstay also yields absurd results. For example, Plaintiffs allege that a motorist parking in the Loop portion of the Central Business District is required to pay $6.50 per hour between 8 am and 9 pm. See SAC ¶ 24. If a person parked for that entire span without paying, she would be getting for free a parking spot that otherwise would cost $84.50 (13 hours multiplied by $6.50 per hour). Far from being excessive, the $65 fine would, under Plaintiffs' theory that the fine must

Indeed, in Towers, the Seventh Circuit upheld a much larger City fine – $500 – on vehicle owners whose vehicles were unknowingly used by a third party to transport illicit items. The court explained that, "although the gravity of the plaintiffs' offense is not high compared to that of persons who themselves place illegal items in their vehicles," the City could still hold these "innocent" owners responsible, particularly in light of the deterrent function served by the fine. 173 F.3d at 625. If a $500 fine is not excessive even when the gravity of an offense "is not high," it certainly is not excessive to charge one-tenth to one-eighth of that amount here. Count II should therefore be dismissed with prejudice.

### C. Plaintiffs' Equal Protection Claim Should Be Dismissed (Count III).

In Count III, Plaintiffs allege that the City violates equal protection because it imposes ticket liability on parking scofflaws immediately upon violation, while drivers on the Chicago Skyway who fail to pay the toll are given a grace period in which they can pay the missed toll before a fine is imposed. Plaintiffs contend that equal protection requires that they, too, be given an opportunity to cure their violation by paying the incremental amount that would be due based on the number of minutes of the parking overstay. See Compl. ¶ 62 (proposing "an opportunity to mitigate" by paying "a *pro rata* fine determined by the time [of the overstay] multiplied by the rate per hour" applicable to the space).

This claim is reviewed under the rational basis standard, because the claim does not implicate a fundamental right or membership in a suspect class. See Cochran v. Illinois State Toll Highway Authority, 828 F.3d 597, 601 (7th Cir. 2016); Srail v. Vill. of Lisle, 588 F.3d 940, 943 (7th Cir. 2009). To state a claim, Plaintiffs must show that (1) they are similarly situated to drivers on the Skyway, and (2) the difference in treatment between Plaintiffs and Skyway drivers

---

precisely match the length of the overstay, be *too low*, and that is before taking into account the other injuries the City and public incur when motorists overstay the meter.

10

is not rationally related to a legitimate state interest. Indiana Petroleum Marketers v. Cook, 808 F.3d 318, 322 (7th Cir. 2015); Greer v. Amesqua, 212 F.3d 358, 370 (7th Cir. 2000); Derfus v. City of Chicago, 42 F. Supp. 3d 888, 897 (N.D. Ill. 2014). Plaintiffs cannot do either.

First, parking violators and Skyway drivers are not similarly situated. Parked vehicles are stationary on the side of the street, but toll road vehicles are moving amidst other vehicles on a busy highway. These critical differences in whether the vehicles are moving or not, and where they are located, permit the City to adopt different enforcement approaches for each.

Second, even if the two scenarios were similarly situated, Plaintiffs cannot overcome the rational basis standard. That standard is "a paradigm of judicial restraint." Beach Commc'ns, Inc., 508 U.S. at 314. Distinctions drawn by the City bear "a strong presumption of validity" and "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. at 313–14. A difference in treatment does not fail rational-basis review simply "because it is not made with mathematical nicety or because in practice it results in some inequality." Srail, 588 F.3d at 946 (citing City of Chicago v. Shalala, 189 F.3d 598, 606 (7th Cir. 1999)). The Court is not to judge the "wisdom, fairness, or logic" of the City's policy, Beach Commc'ns, Inc., 508 U.S. at 313, but rather should "accept the [City's] answer" as to how best to regulate, Nat'l Paint & Coatings Ass'n v. City of Chicago, 45 F.3d 1124, 1127 (7th Cir. 1995). Differences in treatment are unlawful only if they stem from "sheer senselessness." Pontarelli Limousine, Inc. v. City of Chicago, 929 F.2d 339, 343 (7th Cir. 1991).

There are ample rational reasons for treating toll road drivers and parking violators differently when it comes to a grace period. On a toll road, drivers approaching a toll gate can find themselves without the money on hand to pay the toll. If a penalty were immediately assessed, these drivers could disrupt traffic flow, by, for instance, delaying at the toll booth while

they plead for leniency from the operator. Immediate imposition of a penalty could also cause drivers who lack an I-Pass but find themselves swiftly approaching the I-Pass lane to try to avoid the penalty by swerving into the cash lane at the last second. The government has a legitimate interest in avoiding these sorts of disruptions and dangers to vehicle flow on a busy highway, and the grace period allows drivers who lack the cash on hand, or who are in the wrong lane, to seamlessly move through the toll gate and pay the toll later. See Cochran, 828 F. 3d at 601–02 (upholding toll road grace period as rationally related to "decreas[ing] traffic, increase[ing] efficient use of the highway, and decreas[ing] the resources required to operate tollbooths").[4]

These dynamics are utterly absent in the parking context, and so it is rational for the City to conclude that a grace period is not needed. Indeed, Plaintiffs' underlying premise – that because a grace period exists for toll road drivers, one must necessarily exist for parking violations – is wrong: The City "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Bowen v. Owens, 476 U.S. 340, 347 (1986) (internal quotation and citation omitted) (holding that "[w]hen Congress decided to create some exceptions to the remarriage rule, it was not required to take an all-or-nothing approach."). Moreover, there are affirmative reasons why the City may conclude that a grace period for parking violators is not sound policy. For one, implementing a grace period would add to the City's administrative costs, which rational basis allows the City to reasonably seek to limit. See Armour v. City of Indianapolis, 132 S.Ct. 2073, 2081-82 (2012). Further, a grace period would undermine the City's interest in encouraging parking space turnover, which, as discussed above,

---

[4] Further, many out-of-state drivers undoubtedly use the Skyway, but such drivers may be unfamiliar with how and where the Skyway assesses tolls. See Cochran, 828 F. 3d at 599 (Illinois' toll system operates differently from Ohio's, because it assesses tolls periodically along the route rather than at highway exits). The grace period avoids disruptions by those drivers and makes the Skyway more user-friendly, which can increase its attractiveness, and thereby increasing the revenues collected from the tolls.

12

helps facilitate traffic flow and allows other vehicles to use a limited resource. If the owner could avoid the full fine through an opportunity to cure, he would be inclined to overstay the meter and run the risk of being caught, rather than vacate the spot, because, if caught, he would have to pay only the smaller incremental amount of the overstay rather than the full fine amount. See Compl. ¶ 60 (alleging that the fine can be 120 times to 240 times higher than the *pro rata* charge that would apply to a 5-minute overstay). See also supra, at 6–7 (explaining the deterrence dynamics for parking tickets). For all these reasons, Plaintiffs' equal protection claim should be dismissed with prejudice.

### D. Plaintiffs' Due Process Claim Should Be Dismissed (Count IV).

In Count IV, Plaintiffs contend that their due process rights are violated by the City's failure to provide an opportunity to cure an overstay. Generally, "[t]he essence of due process" is notice and an opportunity to be heard, Mathews v. Eldridge, 424 U.S. 319, 348 (1976), but Plaintiffs do not allege a denial of either. Nor could they, for the City provides multiple notices of the parking violation, as well the opportunity to contest the ticket by mail, or in front of an administrative hearing officer. See MCC §§ 9-100-030 through -090. See also Cochran, 828 F. 3d at 600 ("due process requires only notice of the potential deprivation and an opportunity to be heard, and not notice of a grace period which is unrequired in the first place") (citation omitted); Van Harken, 103 F.3d 1346 (upholding City's administrative adjudication system for parking tickets against federal due process attack).

Plaintiffs' claim thus sounds in substantive, rather than procedural, due process. Their contention is that the City's parking ticket scheme is substantively deficient because it does not recognize a grace period. See Connecticut Dep't of Public Safety v. Doe, 538 U.S. 1, 7–8 (2003); Towers, 173 F.3d at 626–27. But the scope of substantive due process, which guards

13

against government actions that "'shock[] the conscience,'" Bettendorf v. St. Croix Cnty., 631 F.3d 421, 426 (7th Cir. 2011), "is very limited," Tun v. Whitticker, 398 F.3d 899, 900–02 (7th Cir. 2005). Nothing about a $50 or $65 parking fine shocks the conscience, grace period or not. Further, a substantive due process claim requires, among other things, that Plaintiffs overcome the rational basis standard. See Lee v. City of Chicago, 330 F.3d 456, 467 (7th Cir. 2003).[5] Plaintiffs cannot do this, for the reasons discussed supra at 11–13. Count IV should therefore be dismissed with prejudice.

### III. PLAINTIFF PRESTIGIACOMO'S STATE LAW CLAIM AGAINST THE CITY SHOULD BE DISMISSED.

In Count VI, Plaintiff Prestigiacomo sues the City for unjust enrichment under Illinois law. She claims that the City was unjustly enriched by $15 when she erroneously received, and then paid, a $65 parking ticket; a $50 ticket should have been issued instead, based on the zone she was parked in. See SAC ¶¶ 89–93. This state law claim should be dismissed for lack of supplemental jurisdiction because, as demonstrated above, all of Plaintiffs' federal claims should be dismissed. See Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999).

The claim also fails on the merits. Plaintiff's claim is not that the City violated any federal or state law, but simply that the City misapplied its own ordinances by issuing a $65 ticket, instead of $50 one. See SAC ¶¶ 182-83. Under Illinois law, Plaintiff was required to challenge that parking ticket in a particular way – namely, by contesting the ticket before the City's Department of Administrative Hearings ("DOAH"), and then, if unsuccessful, by seeking judicial review by filing an appeal under the Illinois Administrative Review Law, 735 ILCS 5/3-101, et seq. in the Circuit Court of Cook County within 35 days of the administrative decision.

---

[5] As explained in Lee, when, as here, the substantive due process claim involves only the deprivation of property, a plaintiff must also show as a threshold matter either that state law remedies are inadequate, or that a constitutional right other than substantive due process has been violated. See 330 F.3d at 467.

14

See MCC § 2-14-102; 735 ILCS 5/3-103; Van Harken v. City of Chicago, 305 Ill. App. 3d 972, 978 (1st Dist. 1999). This was the exclusive remedy available to Plaintiff. Under Illinois law, when administrative remedies are available, a party must pursue them and file a lawsuit directly challenging any final administrative decision, rather than seek judicial relief in an independent, collateral lawsuit. See 735 ILCS 5/3-102; Midland Hotel Corp. v. Dir. of Emp't Sec., 282 Ill. App. 3d 312, 319 (Ill. App. Ct. 1996). Prestigiacomo followed none of these required procedures to challenge her ticket; instead she paid it. See SAC ¶ 93. She therefore cannot challenge the ticket in this collateral lawsuit.

Even more, Prestigiacomo's decision to pay the ticket dooms her claim under Illinois' voluntary payment doctrine. Under that doctrine, "'money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal.'" Dreyfus v. Ameritech Mobile Communications, Inc., 298 Ill. App. 3d 933, 938, (1st Dist. 1998) (quoting Smith v. Prime Cable, 276 Ill. App. 3d 843, 847 (1st Dist. 1995). A plaintiff is not permitted to "'postpone the litigation by paying the demand in silence or under a reservation of right to litigate the claim, and afterward sue to recover the amount paid.'" Smith, 276 Ill. App. 3d at 848 (quoting 66 Am. Jur. 2d Restitution & Implied Contracts § 94, at 1035–36 (1973)). For all these reasons, Count VI should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice all claims against the City – Counts I, II, III, IV, and VI – and dismiss the City entirely from this action.

Date: July 3, 2019                        Respectfully submitted,

                                                   MARK A. FLESSNER,
                                                   Corporation Counsel of the City of Chicago

                                                   By:     /s/ Andrew W. Worseck
                                                                  Chief Assistant Corporation Counsel

                                                   Andrew W. Worseck
                                                   Peter H. Cavanaugh
                                                   City of Chicago, Department of Law
                                                   Constitutional and Commercial Litigation Division
                                                   30 North LaSalle Street, Suite 1230
                                                   Chicago, Illinois 60602
                                                   (312) 744-7129 / 744-0897
                                                   *Attorneys for Defendant City of Chicago*